UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CNE DIRECT, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| BLACKBERRY CORPORATION f/k/a | ) | |
| RESEARCH IN MOTION CORPORATION | ) | |
| and | ) | |
| ASSET RECOVERY, LTD. | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| Bank of America, Corporation and | ) | |
| Royal Bank of Canada | ) | |
| | ) | |
| Trustee Process Defendants. | ) | |

**VERIFIED COMPLAINT**

**INTRODUCTION**

Plaintiff CNE Direct, Inc. ("CNE") seeks damages suffered as a result of defendants' bad

faith breach of an agreement to sell CNE $6.519 million of mobile phone memory parts that

CNE, in turn, had committed to purchase for its customers abroad.  As detailed herein,

defendants not only reneged on the deal, but also attempted to extort CNE for an additional $1.68

million, knowing that CNE had already obligated itself to deliver the parts to its customers.

Because of the defendants' malfeasance, CNE could not deliver the parts to its customers and

suffered not only an immediate $1.075 million loss of profits but also a destruction of its good

will with an important community of its customers.

By way of brief background, in October 2013, defendant Blackberry Corporation f/k/a Research in Motion ("RIM") (referred to herein as "Blackberry") - - the maker of Blackberry mobile phones - - put certain excess inventory, including memory components known as NAND Flash,[1] up for bid (the "Inventory") through its authorized broker, defendant Asset Recovery, Ltd. ("Asset Recovery").[2]  After collecting its own bids from customers oversees, CNE successfully bid on their behalf for the Inventory (total price $6,398,500).  As a result of its successful bid, CNE made sales commitments to its own customers, requested 20% deposits (which were sent immediately), and borrowed the remainder of the funds at unfavorable rates in order to be in a position to pay Blackberry.

On November 26, 2013, Asset Recovery stated that there was "a snag" in the deal and that Blackberry was requiring an additional $120,000 above the accepted bid price.  The next day, November 27th, Asset Recovery delivered to CNE a pro forma invoice with the cost of the inventory raised by $120,000 to $6,519,130.  Although upset by this bait and switch tactic, CNE agreed to the new price and accepted the offer in writing.  Unfortunately, defendants did not honor this revised deal either.  Instead, knowing that CNE needed to close the deal as soon as possible to satisfy its own obligations, defendants attempted to increase the sale price again - - this time by $1.68 million.  Notably, the increased price would result in CNE selling the parts to its customers at a significant loss.  Not surprisingly, CNE refused to accept this new extortionate price and instead had to notify its own customers that it could not deliver the promised parts.

---

[1] NAND Flash is a special form of Flash memory.  Flash memory is a memory technology that keeps data even when the power supply is cut off.

[2] Blackberry and Asset Recovery are referred to collectively herein as "defendants."

As a result of defendants' bad faith conduct, CNE brings claims against defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and for violation of G.L. ch. 93A, §11. To secure its likely judgment, Plaintiffs seek attachments on all defendants' real and personal property (including property in the hands of the trustee process defendants) within the jurisdiction of this Court.

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. §1332.

2. Venue is proper pursuant to 28 U.S.C. §1391.

## PARTIES

3. CNE Direct, Inc. is a Massachusetts corporation with a principal place of business at 5 Fifth Street, Peabody, Massachusetts.

4. Defendant Blackberry Corporation, f/k/a Research in Motion Corporation, is upon information and belief, a Delaware corporation with a principal place of business in Texas. Blackberry also maintains an office at 35 New England Business Center Drive, Suite 100, Andover, Massachusetts 01810.

5. Defendant Asset Recovery, Ltd. is upon information and belief, a New York corporation with its principal office in New York. Asset Recovery is an authorized agent of Blackberry.

6. Trustee process defendant Bank of America Corporation ("BAC") is an international financial services company with its corporate headquarters located at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, North Carolina 28255. BAC has branches in Suffolk County, Massachusetts, including its offices at 100 Federal Street in Boston. Defendant Asset Recovery maintains bank accounts at BAC.

7.     Trustee process defendant Royal Bank of Canada is the parent company of RBC Capital Markets ("RBC Capital") (collectively, "RBC"), its worldwide investment and corporate banking subsidiary.  RBC Capital has offices in Suffolk County, Massachusetts, including offices at One Beacon Street, 24th Floor, Boston, MA 02108.  Upon information and belief, defendant Blackberry maintains accounts with RBC.

## FACTS

### The Business of CNE and the Importance of its Goodwill

8.     CNE is a global leader in the reverse distribution of technology hardware. Specifically, CNE buys large quantities of excess and outdated computing and communications related products from companies with inventory that is considered a "non-performing" asset. CNE receives, inspects, tests, refurbishes, and resells this material through an international network of logistics and sales locations.

9.     Like many highly competitive industries, critical to CNE's success is its reputation and good will it generates with its customers.  This is especially true in the massive Far East market, including China, where the major customers have several distributor options. Indeed, CNE has spent 11 years building a high level of trust in the Chinese marketplace, by delivering on its obligations.  While it is a vast market, the community of mobile phone part buyers is small enough that bad news - - such as the failure to deliver parts - - travels fast.

### Blackberry and its Relationship with Asset Recovery

10.     Blackberry is the maker of mobile phones and formerly the number one leader in the industry with fiscal 2010 revenue of nearly $15 billion and a U.S. market share of over 40%.

11.     In the past three years, however, with the emergence of Apple's iPhone and Android models, as well as publicized technical issues including the delayed roll-outs of its

newer models, Blackberry's sales have collapsed, its U.S. market share is now below 4%, and its stock price has dropped from over $80 to under $10 per share.

12.     As a result of faltering demand, Blackberry often has an oversupply of valuable product parts - - which it is willing to off-load in order to recover a small fraction of its investment.

13.     One valuable (saleable) part of a mobile phone is its NAND Flash. NAND Flash is a special form of Flash memory that keeps data even when the power supply is cut off.

14.     There is significant spot market demand, especially in China, for NAND Flash that can be reinstalled in other mobile phones. The shelf life for these parts, however, can be short, as they will become obsolete or "trailing edge" relatively soon when more advanced and/or current technology enters the market.

15.     Blackberry and other mobile phone manufacturers with excess inventory offer their excess parts in bulk through a bidding process often utilizing authorized agents, such as Asset Recovery.

16.     Typically, CNE will receive written notification from an agent (such as Asset Recovery) that a certain bulk number of NAND Flash or other mobile phone parts are available for purchase.

17.     CNE, and other resellers, then place bids with the agent to purchase the memory. Like in most bidding procedures, a back and forth occurs between buyers and sellers to see if a price can be agreed upon.

18.     Once a bid has been accepted, the buyer provides the seller with a purchase order and the seller in turn provides the buyer with an invoice for payment.

19.     Upon receipt of the invoice, the buyer wires the agreed upon price to the seller and the product is released and immediately shipped.

20.     For example, immediately prior to the transaction at issue, Asset Recovery forwarded from Blackberry an offer to sell Z10 (a Blackberry mobile phone) LCD screen assemblies.  CNE was the successful bidder and defendants provided CNE with the proforma invoice.  In turn, CNE sent to Asset Recovery the purchase order that conformed to the proforma, thereby accepting the offer in writing.  CNE wired the funds the next day and accepted delivery of the parts thereafter.

**The NAND Flash Transaction at Issue**

21.     On October 25, 2013, Sean Murphy, Blackberry's Vice President of Commodity Management, released to its authorized agent, Asset Recovery, "the details of excess memory that we are looking to move."  Specifically, Blackberry stated that it had "healthy positions" in two NAND Flash parts:  (1) a Samsung part identified as K3PE0E000A-XGCT00 (the "Samsung Part"); and (2) a Hynix part identified as H9TKNNNBPDMRAR-NGHR (the "Hynix Part").  Asset Recovery immediately placed the product out to bid, including by email to CNE.  A true and accurate copy of the October 25th email is attached hereto as Exhibit A.

22.     Through further communications with Asset Recovery, CNE learned that Blackberry was offering 500,000 units of both the Samsung and the Hynix Parts.

23.     On October 31, 2013, in collaboration with its own customers oversees, CNE bid $3.45 per unit on the Samsung Part and $2.10 per unit on the Hynix Part.  A true and accurate copy of the October 31st bid is attached hereto is as Exhibit B.

24.     Following back and forth negotiations, on November 8, 2013, CNE increased its bid to $3.90 for the Samsung Part and $2.50 for the Hynix Part.  A true and accurate copy of the November 8th bid is attached hereto as Exhibit C.

25.     While CNE was waiting for written confirmation that its bid was accepted, on November 12, 2013, Blackberry offered further parts for bid, including more Samsung and Toshiba NAND Flash parts.  A true and accurate copy of the November 12th offer is attached hereto as Exhibit D.

26.     CNE placed bids on these additional parts as well.

27.     Ultimately, on or about November 20, 2013, Asset Recovery informed CNE that: (i) its bid on all five parts referenced above was accepted for an aggregate price of $6,398,500 (the "Inventory"); and (ii) it should immediately issue the purchase orders for the Inventory, which CNE did.  A true and accurate copies of the purchase orders are attached hereto as Exhibit E.  CNE was further informed by Asset Recovery that is should be prepared to wire the purchase price 24 hours after receipt of the proformas, and as early as November 27th.

28.     With its offer accepted, the next day CNE finalized agreements with its customers abroad for them to ultimately purchase the Inventory for approximately $7.6 million.  True and correct copies of the proforma invoices are attached hereto as Exhibit F.  To secure the sale, CNE's customers placed an initial 20% deposits on the Inventory with CNE and CNE borrowed $4 million as a short term loan at unfavorable terms in order to immediately be able to wire the full purchase price to defendants.

29.     Ultimately, on November 25th, instead of requesting the wire payment to complete the transaction, Asset Recovery sent CNE a "quote" that identified the quantity of each of the Inventory parts - - but no price or delivery date.  A true and accurate copy of the quote is

attached hereto as <u>Exhibit G</u>.  Concerned by this development, CNE wrote Asset Recovery:

"Please understand why [we are] anxious:  [our] company [is] freezing $6 million dollars so we

have it available the moment the wires need to occur. . ."  A true and accurate copy of the

November 25th email is attached hereto as <u>Exhibit H</u>.

      30.    Finally, on November 25th at 7:37 p.m., Asset Recovery responded (in caps)

"PART COUNT WILL BE CONFIRM 11/26.  ANY DEVIATION SHOULD BE MINIMAL.

THE P.I. [PROFORMA INVOICE] WILL FOLLOW IMMEDIATELY."  A true and accurate

copy of the November 25th email is attached hereto as <u>Exhibit I</u>.

      31.    Despite this promise of performance, however, CNE received nothing on

November 26th.

      32.    On November 27th, CNE's President wrote to Asset Recovery in an effort to get

defendants to move forward with their agreement:

> Stephen,
>
> Ed Latham here, President and CEO of CNE Direct.  **Can you help me understand what's happening with our agreement to purchase $6,398,000 worth of NAND Flash from Rimm?  Your organization accepted our bid and outlined what was required of CNE which included CNE to prepay by wire in full as early as today for a pick up as soon as Friday of this week.  We have met all your requirements and are prepared to execute our wire today.**
>
> Stephen, we expect your organization/Rimm to execute on our agreement by issuing proforma invoices, requesting the wire and making the material available for pickup no later than 72 hours after we wire, as agreed.  Failure to do so will force us to pursue all means necessary to enforce our legal rights.  We need your response in writing by noon today, eastern standard time.

(emphasis added).  A true and accurate copy of the November 27th email is attached hereto as

<u>Exhibit J</u>.

33.     Asset Recovery then called CNE and informed the company that Blackberry was requiring an additional $120,000 - - from $6,398,500 to $6,519.130 - - to close the deal.  Irritated but anxious to complete the transaction, CNE agreed to the new price.

34.     Asset Recovery then sent a pro forma invoice <u>and</u> directed CNE to "Please remit payment at your earliest convenience."  A true and accurate copy of the e-mail and invoice is attached hereto as <u>Exhibit K</u>.  CNE, for its part, formally accepted the new price by sending purchase orders that conformed to the new invoice.  A true and accurate copy of the purchase orders are attached hereto as <u>Exhibit L</u>.

35.     The "Special Terms and Instructions" included in CNE's purchase order, namely a 60-day warranty and the parts in "factory sealed" condition, are standard industry terms that are routinely part of transactions.

36.     In short, as of November 27, 2013, as a result of CNE's written acceptance of defendants' offer, the parties had entered into a binding agreement for CNE to purchase the Inventory for $6.519 million (the "Agreement").

37.     Next, instead of performing under the agreed upon deal and knowing that it had CNE over a barrel, defendants sought to raise the price <u>yet again</u>, this time by an additional $1.68 million for a total of almost $8,200,000.  In a bizarre email accompanying the "new" pricing, Asset Recovery states that:

> Ed [Latham, CNE's President] I want to thank you for comprehending the situation, I can not be blameless but I can be better.  I did no favor for you or Rim in this transaction.  I have the model of the pricing attached and I hope it can work for you and your clients I have no part in financially and can only hope that it can be worked out.
>
> I will facilitate this order if it should come to pass and I will be at your disposal at any time

A true and accurate copy of the November 27th email is attached hereto at <u>Exhibit M</u>. Asset Recovery stated that it was Blackberry who refused to close the deal unless CNE agreed to pay an additional $1.68 million over the agreed upon contract price.

38.     CNE's reaction was swift. CNE immediately wrote directly to Sean Murphy at Blackberry recapping the series of emails and demanding that the company perform under the Agreement. A copy of the November 27, 2013 email is attached hereto as <u>Exhibit N</u>.

39.     Caught red-handed in its effort to jack up the previous agreed upon price - - Mr. Murphy refused to communicate with CNE at all.

40.     Upon information and belief, after accepting CNE's bid and agreeing on contractual terms, defendants wrongfully "shopped" the Inventory to CNE's competitors in order to increase the return to themselves to CNE's detriment.

41.     Obviously, CNE rejected defendants' extortionate demands for an additional $1.68 million above the contract price and in turn had to cancel its agreement with its overseas customers, losing, among other things, the $1.075 million that it was netting on the re-sale.

**The Need for Prejudgment Security**

42.     As detailed above, CNE has suffered a sum certain loss of $1.075 million under its agreement with its customers. This number does not include losses suffered as a result of damages to its goodwill, or other consequential damages or losses.

43.     Plaintiffs have no security to collect on its judgment.

44.     Upon information and belief, defendants have no liability insurance.

**Count I**
**(Breach of Contract Against Defendants)**

45.     CNE repeats, realleges, and incorporates by this reference the allegations contained in the preceding paragraphs.

46.     As detailed above, CNE entered into an enforceable contract with defendants to purchase the Inventory for $6.519 million.

47.     At all times, CNE was able and willing to perform its part of the Agreement and, but for defendant's breach, would have fully so performed.

48.     At all times, defendants had knowledge that CNE was purchasing the Inventory for the benefit of its own customers.

49.     As set forth above, defendants have materially breached the terms of the Agreement by disavowing the parties' agreement to sell the Inventory for $6.519 million to CNE and by failing to deliver the goods.

50.     As a direct result of defendants' material breach of the parties' Agreement, CNE has suffered damages in an amount to be proven at trial, plus interest, costs, attorneys' fees and consequential damages.

## Count II
### (Breach of the Covenant of Good Faith and Fair Dealing Against Defendants)

51.     CNE repeats, realleges, and incorporates by this reference the allegations contained in the preceding paragraphs.

52.     Defendants' conduct outlined above violated the covenant of good faith and fair dealing contained in the Agreement to purchase the Inventory.

53.     As a result, CNE has suffered damages in an amount to be proven at trial.

## Count III
### (Violation of Ch. 93A §11 Against Defendants)

54.     CNE repeats, realleges, and incorporates by this reference the allegations contained in the preceding paragraphs.

55.     Both CNE and defendants engage in the conduct of trade or commerce including within the Commonwealth.

56.     As detailed herein, in their dealings with CNE, including their bad faith breach of the purchase agreement and effort to extort more funds from CNE, defendants engaged in unfair and deceptive conduct.

57.     Defendants' unfair and deceptive actions occurred primarily and substantially with in the Commonwealth.

58.     As a result of defendants' misconduct, CNE has suffered damages in an amount to be proven at trial.

## Count IV
### (Trustee Process)

59.     CNE repeats, realleges, and incorporates by this reference the allegations contained in the preceding paragraphs.

60.     Upon information and belief, defendant Asset Recovery maintains a bank account at BAC.

61.     Upon information and belief, defendant Blackberry maintains a bank account at RBC.

62.     Pursuant to M.G.L. c. 246, § 1, CNE is entitled to a trustee process attachment on defendant Asset Recovery's accounts at BAC and defendant Blackberry's accounts at RBC to satisfy CNE's likely judgment against Defendants.

63.     The attachment is necessary and reasonable security for the judgment which, for good and reasonable cause, CNE expects to recover in this action.

64.     Additionally, if the attachment is not granted, there is a significant risk that defendants will remove their funds from the possession, custody or control of the Trustee Process defendants to the detriment of CNE.

### Count V
### (Reach and Apply)

65.     CNE repeats, realleges, and incorporates by this reference the allegations contained in the preceding paragraphs.

66.     On information and belief, customers of defendants hold, or have held, money or assets on behalf of defendants.

67.     Pursuant to M.G.L. c. 214, § 3(6), CNE is entitled to reach any such money or assets and apply it to satisfy Plaintiff's likely judgment against Defendants.

### PRAYERS FOR RELIEF

WHEREFORE, CNE respectfully requests that the Court:

A. After a hearing, enter a prejudgment attachment on all property belonging to the defendants up to the amount of $1,075,000, including but not limited to a trustee process attachment as requested in Count IV.

B. After notice and hearing, preliminarily enjoin the trustee process defendants, and their officers, directors, shareholders, agents, servants, employees, attorneys, pledgees, nominees, successors and assigns from conveying, transferring, alienating, selling, hypothecating, encumbering, disposing or paying any accounts, payables or other sums, amounts, income or funds to or for the benefit of the defendants up to the amount of $1,075,000.

C. Under Counts I through III of the Complaint, after a trial on the merits, enter judgment in favor of plaintiff.

D. After judgment has entered, levy upon all attached property of the defendants.

E. Under Count III, award plaintiff multiple damages and attorney's fees.

F. Award such other relief as is deemed just and equitable.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

CNE Direct, Inc.

By its attorneys,


/s/ Dana A. Zakarian
William C. Nystrom BBO#559656
Dana A. Zakarian BBO# 641058
Nystrom Beckman & Paris LLP
One Marina Park Drive, 15th Floor
Boston, MA  02110
(617) 778-9100
DATED:  January 21, 2014          (617) 778-9110 (fax)

## VERIFICATION

The undersigned, Ed Latham, states under the penalties of perjury that he has read the Verified Complaint; that the allegations of fact contained therein are based on his personal knowledge or on information given to him by persons with personal knowledge thereof; that said allegations of fact are true to the best of his knowledge and belief; and that no material facts have been omitted therefrom.

Signed under the penalties of perjury this 21st day of January, 2014.

Edward Latham
CEO and President
CNE Direct, Inc.